## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**RICHARD GILLIAM**                                                        **PLAINTIFF**
**#209415**

**v.**                                   **No: 4:19-cv-00593 PSH**

**JOHN STALEY, *et al.***                                              **DEFENDANTS**

## <u>MEMORANDUM AND ORDER</u>

### I. Introduction

Plaintiff Richard Gilliam filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on August 22, 2019, and an amended complaint on October 16, 2019 (Doc. Nos. 2 & 8).  Gilliam sues Sheriff John Staley, Administrator Matthew Hodge, Administrative Assistant Margie Grigsby, and Head of Medical Robert Lanius in their individual capacities (the "Defendants").  Doc. No. 8 at 1-2.  He alleges that Hodge, Grigsby, and Lanius were deliberately indifferent to his serious medical needs while he was incarcerated as a pre-trial detainee at the Lonoke County Detention Center ("LCDC").[1]  *Id.* at 4-7.  Specifically, he claims that his lower back pain was not adequately treated, and he was denied certain shoes for which he had a

---

[1] Gilliam is currently incarcerated in the Arkansas Division of Corrections. *See* Doc. No. 36.

medical prescription.[2]  *Id.*  Gilliam also alleges that all the Defendants (including Sheriff Staley) denied him medical care in retaliation for past grievances, medical requests, and a PREA[3] complaint he lodged against Grigsby.  *Id.* at 6-7.

Before the Court is a motion for summary judgment, brief in support, and statement of undisputed facts filed by the Defendants (Doc. Nos. 31-33).  Although he was notified that he must file a separate, short statement setting forth the disputed facts that he believes must be decided at trial in accordance with Local Rule 56.1, he did not do so.  *See* Doc. No.  34.  Instead, Gilliam filed a statement of indisputable material facts in which he added to the facts submitted by Defendants and attached some evidence (Doc. No. 35).  Because Gilliam failed to controvert the facts set forth in the Defendants' statements of facts, Doc. No. 33, those facts are deemed admitted.  *See* Local Rule 56.1(c).  Defendants' statements of facts, and the other pleadings and

---

[2] Gilliam also generally alleges that he and other prisoners did not receive adequate mental health treatment at the LCDC.  Doc. No. 8 at 6.  This allegation does not describe a viable constitutional claim.  First, Gilliam may not bring claims on behalf of other prisoners.  Second, Gilliam does not specifically describe what mental health treatment he believes he needed, whether or not he requested it, who denied or prevented him from receiving treatment, and how the lack of treatment injured him.  Third, Gilliam does not allege that any of the Defendants denied him medical treatment or were otherwise involved in providing mental health treatment at the LCDC.  A defendant may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violation.  *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).

[3] PREA refers to the Prison Rape Elimination Act of 2003.

exhibits in the record, establish that the material facts are not in dispute, and Defendants are entitled to judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

In support of their motion for summary judgment, the Defendants submitted a statement of indisputable material facts (Doc. No. 33) with the following documentary evidence attached: an affidavit by Lonoke County Jail Administrator Kristi Flud, custodian of records for the LCDC (Doc. No. 33-1); Gilliam's Arrest and Booking Information (Doc. No. 33-2); Gilliam's medical records from the PCRDF (Doc. Nos. 54-1 & 54-2); Gilliam's Requests and Grievances (Doc. No. 33-3); Gilliam's Incident Reports (Doc. No. 33-5); relevant policies of the LCDC (Doc. No. 33-7); Gilliam's medical records from January 4, 2018, to November 14, 2019 (Doc. No. 33-8); an affidavit by Robert Lanius (Doc. No. 33-9); an affidavit by Margie Grigsby (Doc. No. 33-10); and an affidavit by Sheriff John Staley (Doc. No. 33-11).

Gilliam filed a response to the Defendants' motion but did not file a separate statement disputing their statements of facts as required under Local Rule 56.1 (Doc. No. 35).  With his response, Gilliam submitted seven statements from other inmates stating they witnessed Gilliam having back pain (Doc. No. 35 at 6-12).  However, none of these clearly relate to the time period at issue in this lawsuit.  Several are dated in 2020 and others are not dated at all.  Gilliam also submitted a medical record from 2016, which is described below (Doc. No. 19-23).

### Gilliam's Complaint Allegations

In his amended complaint, Gilliam alleges that he began experiencing lower back pain on August 6, 2019, while detained at the LCDC.[4]  Doc. No. 8 at 4-5.  He states:

> On 8-6-19 at 1:45 pm I woke up with severe pain in my lower back and wasn't able to stand up straight without the support of others. I had other inmates relay my need to the control tower and the following personel showed up, Margie Grigsby, administrative assistant, OIC Devore, OIC Steffen, Transportation officer Rice, and maintenance man William Shipp. The OIC Devore did not have the key to the padlocks on my door readily accessible in which caused further delay of the medical treatment that I was in need of. When the staff did get in to my cell the quickly brushed off why they had been called in there, and began to shake down my cell. At this time they confiscated the shoes that was approved just days before. I was on the floor, verbally

---

[4] Gilliam was arrested and booked into the LCDC on December 25, 2017.  Doc. No. 33-2, *Arrest and Booking Information*, at 1.

protesting and asked if I would get medical attention and was informed that they did not think it to be a serious medical condition.[5]

*Id.*  He claims he did not see a doctor until a week later and never received x-rays or a cat scan because Hodge, Grigsby, and Lanius did not believe his back pain was a serious medical condition.[6]  *Id.* at 5.  He further claims that Grigsby denied him treatment after he reported her for a PREA violation, and that Hodge, Lanius, and Sheriff Staley denied him medical treatment in retaliation for submitting grievances and medical requests.  *Id.* at 6-7.

### Gilliam's Relevant Requests/Grievances

At 3:53 p.m. on August 6, 2019, Gilliam submitted a medical request stating:

On 8-6-19 I notified staff members that I was having lower back pain. Five deputies showed up to my cell who are unqualified to make a medical judgment. I find it to be very disturbing that there is not adequate medical staff here to deal with medical issues. I am crawling around on the floor just to get up and use the bathroom & get trays. I was standing at the door talking at an inmate to get the medical request and fell down to the ground with sharp pain in my lower back. I am hurting bad.

---

[5] All quotations are transcribed verbatim without any corrections for misspellings or mistakes.

[6] Gilliam also noted in his amended complaint that his hands had been injured by deputies.  Doc. No. 8 at 5.  It is not clear whether he is complaining about not receiving x-rays and a cat scan for his hand injury or his back.  The record in this case shows that after Gilliam filed his initial complaint in this case in August 2019, his hands were injured in September 2019.  That injury is the subject of a separate lawsuit, *Gilliam v. Devore, et al.,* No. 4:19-cv-00704-BRW.

Doc. No. 33-3, *Requests and Grievances,* at 6.   On August 8, 2019, Grigsby

responded by stating, "You will be placed on medical list."  *Id.*

Later, on August 6, 2019 at 3:59 p.m., Gilliam submitted a written grievance

stating:

> On 8-4-19 my wife dropped off a pair of brand new black nike air max,
> that she was given the ok by Lanius who is head of medical, after
> pulling all of my medical records from pulaski. He authorized me
> having a soft shoe pad, just like I have at every other facility.  I was
> having real bad back pain on 8-6-19 which caused deputies to come
> into my cell.  It appeared they were more worried about the materialistic
> things in my cell rather than my health.  I have still not received any
> medical help.

*Id.* at 7.  On August 9, 2019, Hodge responded by stating, "Your shoes are not a soft

shoe pad, and are not medical in nature.  You will be seen by the Dr. on 08/13/2019."

*Id.* Gilliam submitted a lengthy appeal, stating:

> Please help me understand, how I can put in a medical request on 8-6-
> 19 about a slipped disk in my back that yall are laughing about here and
> not receive any medical attention. Failure to provide sick calls every
> day to inmates with serious needs such as a slipped disk in my back is
> a violation of the united states constitution. And now you are telling me
> I have an appointment on the 13th when You came in on the 8th at
> 10:16 AM with unnecessary aggressiveness. You told me that I would
> be seeing the doctor on the 9th, is another one of your good lies. The
> fact that I am not able to get up out of my bed in a timely manner to get
> meds or trays or stand up straight to use the bathroom shows me what
> I have been thinking and feeling the whole time. Unessessary
> discrimination based on charges, skin color and personality. I dont care
> what yall think about me but denying me medical attention is
> unacceptable. And as far as the shoes, my wife spoke with Lanius on
> the 2nd and okd the soft shoe pads from pulaski, forrest city, seagulville
> texas, fort worth texas, and beaumont texas are all the places that I have
> had a soft shoe pad. Lanius called and verified with Pulaski and gave

my wife the ok to bring the Nike air max but I still had to
take out the shoe strings. She accidently left the price tag in the shoe
which caused a bunch of disturbance in the jail. Deputies said that they
had to work 48-55 hours to afford shoes like that. That is not my
problem. The fact that someone can override Lanius being over medical
shows me that someone is going out of their way to discriminate on me
and my medical needs. On the 6th, when Margie, Ship, Rice, Devour,
and Stephen come into my cell when I was complaining about back
pain, the first thing they looked at my shoes.  Not considering the fact
that I had back pain, they were more concerned about my shoes and
threatened to take them off my feet. Like I told Margie on the 8th at
10:11 when we were arguing, right before yall stormed in here
aggressively for no reason, 90 percent of the jail has tennis shoes on.
On the 1st, I witnessed OIC devour bring in two white men with tennis
shoes, one with shoe strings. I dont see nobody taking theirs.  . . .

*Id.* at 7-8.  On August 16, 2019, Sergeant J. Hall responded to the appeal by stating,

"If medical or orthopedic shoes are needed, they can be purchased off of

commissary. We are currently in the process of removing any non medical sneaker

type shoes from inmates."  *Id.* at 8.

On August 7, 2019, Gilliam submitted a medical request stating:

On 8-6-19 at 2:15 PM, I slipped a disk in my back and have yet to
receive any proper medical attention. I have been crawling on the floor
to use the bathroom. I cannot sit down to take a sh*t. Margie and 4
deputies showed up who have no medical experience to properly deal
with issues such as this. Margie was contacted last night at 8:30 PM by
the OIC He explained to her that I was in bad pain. She told me to put
in a sick call. I consider this issue to be a serious matter & harmful to
my health.

*Id.* at 10.  On August 8, 2019, Grigsby responded by stating, "received."  *Id.*

On August 8, 2019, Gilliam filed a PREA request claiming that Grigsby sexually assaulted him the night before.[7]  *Id.* at 11.  The same day, he submitted a grievance, stating:

> -Filing on 2 days worth of medical requests about my back, left unanswered while I am in severe pain and suffering, barely able to walk around.
> -Excessive force used to lock me down when I wasn't asked today, several armed deputies used at taser point on me, bein discriminated against. -shoes being taken after I received a script for shoes and not returned. -Margie states she can come in my cell by herself anytime to do whatever she wants, and laughed at my hurt back.

*Id.* at 12.  On August 9, 2019, Hodge responded by stating: "You will be at the 08/13/2019 Medical call. You told OIC Berryman that you were not going to lock down, and no armed deputies were in this jail. Margie can search your cell at anytime in accordance with Jail Standards and Policy." *Id.*  Gilliam filed an appeal discussing his allegations against Grigsby.  *Id.*

On August 9, 2019, Gilliam submitted a medical request stating:

> The fact that the entire jail staff knows that my back is hurt and they are laughing about it, and they are refusing me medical attention, is clearly discrimination. Prison officials are obligated under the 8th amendment to provide prisoners with adequate medical care. This principle applies regardless of whether the medical care is provided by governemental employees or by private medical staff provided by the government. Hodge said yesterday that I would be seeing the doctor today and I haven't

---

[7] Gilliam filed a separate lawsuit concerning his allegations that Grigsby sexually assaulted him.  *See Gilliam v. Grigsby,* No. 4:19-cv-00772-BSM-JTK.

*Id.* at 14.  On August 13, 2019, Lanius responded by stating, "You were seen by the doctor today and she has ordered that you get an X-ray on your lower back.  I am getting the X-ray scheduled for you."  *Id.*

Later on August 9, 2019, Gilliam submitted another inmate grievance stating:

Attention Mr. Hodge: I am in even more serious pain in my back now, then I did on the 6th when I put in my medical request. You told me yesterday, when you put the taser on me that I would have a doctor visit today. Why are yall denying me medical care? I heard from one of the guards that my back pain to Margie is not a serious medical condition. Yall are depriving me of medical attention. And the officials laughing at me while I am in pain, I consider to be racism and unprofessional.

*Id.* at 15.  On August 12, 2019, Hodge responded to the grievance by stating, "I nor any other deputy did not put a taser on you. No one is denying you medical care. You have been added to the Dr. call list for Tuesday 08/13/2019."  *Id.*  Gilliam then submitted an appeal in which he complained about multiple issues, including not being seen in sick call for his back pain on August 9 and Lanius taking his shoes. *Id.*

On August 10, 2019, Gilliam submitted an inmate grievance stating:

To Sgt Hall: As far as my back and the medical. They came and got a guy out of F5 and took him to medical and coincidently looked over me and denied me medical after numerous request for medical assistance. Thursday Hodge told me that I would be seeing the doctor on Friday the 9th. Then came back Friday afternoon and told me that it would be on Tues the 13th which would be four days later. Why am I being denied adequate professional medical care? Why was I looked over on the doctor call Friday?

*Id.* at 17.   On August 16, 2019, Sergeant J. Hall responded to the grievance by stating, "After speaking with the staff after the fact, I learned the list was made and you were put on the next available list. I can assure you that you will be receiving medical care as quickly as possible."   *Id.*   Gilliam appealed on August 19, 2019, stating, in relevant part,

> . . . I went to the doctor on the 13th, paid the doctor, and got some ibuprofen.  I have yet to receive any x-rays.  On top of that, I am on suicide watch, sleeping on a cold concrete slab and my back still hurts. It has got to be about 30 degrees in here.  On top of that my feet have swollen up, I have fluid on my ankles.  They done took my shoes and all these white boys run around with theirs still. . . .

*Id.* Hodge responded the same day, stating, "I will look into why your xrays have not been ordered yet, and the trustee's have shoes due to their jobs.  When they are not trustee's they do not get shoes.  This is no discrimination nor racial profiling." *Id.*

From August 11 until he filed this lawsuit on August 22, 2019, Gilliam submitted an additional 21 requests or grievances.  *See* Doc. No. 33-3 at 18-43.  He mentioned back pain in the appeal of one of those grievances.  Specifically, in his appeal dated August 19, 2019, concerning a grievance about discrimination and racial profiling, Gilliam stated, "I am still in pain with fluid around my ankles and waiting on xrays I have yet to receive for my injured back.  But I HAVE received a BILL from yall!  You are quick to take my money but SLOW to give me the help I need."  *Id.* at 36.  During this time period, Gilliam complained about his shoes twice:

on August 12 and 14, 2019.  *Id.* at 20 and 22.  However, in both these instances, he did not complain that he had a medical need for his shoes, but that white inmates were allowed to keep their shoes while he was not due to his race.  *Id.*

Between August 23, 2019, and October 16, 2019, when Gilliam filed his amended complaint, he filed an additional 56 requests or grievances.  Of those, three mentioned back pain.  On September 5, 2019, Gilliam submitted a request, stating,

> I was taken for a sick call on the 13th of the month for a slipped disk on my back.  I had drs orders to get xrays and I never got them.  I am still in pain.  I was charged for this. And I have yet to receive what I paid for.  I also gave Lanius a packet of filled out paperwork, for my mental health visit. I also asked him about the blood that was drawn from my arm and I have never received the results from.  Quick to take money, but slow to produce.  This is pitiful.

*Id.* at 68.  On September 17, 2019, he requested a doctor's visit, stating, "I am still needing to be seen by the doctor.  My hands are still causing me pain, my feet are still swelling, and my lower back is starting to cause daily pain and issues with my daily routine. . . ."  *Id.* at 86.  On September 22, 2019, Gilliam put in a request complaining about multiple health issues, including back pain.  *Id.* at 94.

### *Gilliam's Medical Treatment at the LCDC*

Before Gilliam claims he experienced severe back pain on August 6, 2019, he was seen by ARCare medical providers for an examination of his right hand following an altercation on January 4, 2018; for an x-ray of his right hand on January 5, 2018; and to obtain medications on June 11, 2019, and July 29, 2019.  Doc. No.

33-8, *Gilliam's ARCare Medical Records*, at 13-17.  No back problems were noted at any of these encounters.  *Id.*

On August 13, 2019, Gilliam was seen by APRN Kristina Dulaney with ARCare medical services for medication and lower back pain.  *Id.* at 12-13.  The nurse examining Gilliam noted that that he said he bent over to pick something up and his back "locked up."  *Id.*  She also noted that he reported having problems with his lower back in the past.  *Id.*  Gilliam denied numbness or tingling of extremities, and the nurse noted he had a steady gait with no limping.  *Id.*  She also noted that Gilliam's back was normal with no apparent malformation or tenderness. *Id.*  APRN Dulaney prescribed ibuprofen and prednisone and ordered an x-ray of Gilliam's lower spine.  *Id.*

Gilliam was examined by APRN Kristin Wood on September 9, 2019, for an injury to his hands that he sustained on the prior Saturday when his hands were shut in his cell's trap door.  *Id.* at 10.  He also complained of pain and swelling in his feet and chest pain associated with asthma but denied any other symptoms. *Id.*  His musculoskeletal system and gait and stance were noted as normal.  *Id.* at 11.  He was prescribed ibuprofen again along with several other medications.  *Id.*

On September 23, 2019, APRN Wood examined Gilliam.  *Id.* at 8.  His chief complaint was listed as medications, but he also complained about pain in his hands and lower back.  *Id.*  His musculoskeletal system and gait and stance were noted as

normal.  *Id.* at 9. APRN Wood discontinued Gilliam's prescription for ibuprofen noting that it was ineffective.  *Id.*  Her plan for Gilliam's back pain included rest, ice, no twisting or heavy lifting, and use of a lumbar support belt.  *Id.*  Gilliam was also instructed to seek additional medical help if his condition worsened.  *Id.*

APRN Wood examined Gilliam again on October 8, 2019, for his complaints relating to his blood pressure.  *Id.* at 6.  He also complained about his hands and a rash on his feet.  *Id.*  His lower backache was listed as a current condition/problem. *Id.*  His musculoskeletal system and gait and stance were noted as normal.  *Id.* at 7. APRN Wood listed plans for treating Gilliam's hypertension, right hand pain, and athlete's foot (tinea pedis).  *Id.*   Gilliam was examined and treated by Dr. Edward Merritt the following day for hand pain.  *Id.* at 4.

Gilliam refused a scheduled follow-up appointment for his blood pressure on October 22, 2019.  *Id.* at 3. Gilliam was seen by PAC David L. Brightwell on November 14, 2019, for tooth pain. *Id.* at 1.  He was prescribed several medications, including prednisone and ibuprofen at this visit, and referred to a dentist.  *Id.* at 2.

### *Gilliam's 2016 Medical Record*

Gilliam submitted a copy of a medical record from November 2016 showing that he received treatment for a back injury in the emergency department at Baptist Hospital in Little Rock.  Doc. No. 35 at 19-23.  Gilliam reported a sore back after hand digging a grave.  *Id.* at 22.  The physician who examined him stated:

Patient presents with myofascial discomfort in his lower back.  This is completely atraumatic and I do not believe x-rays are warranted in this situation.  He will be given a pain shot now and started on a Medrol Dosepak as well as Lortab and Zofram.  He will see his primary care physician tomorrow to discuss physical therapy and return immediately if worse.

*Id.* at 21.

### LCDC Incident Reports

The Defendants submitted incident reports concerning Gilliam dated from May 2018 to October 2019.  Those reports show that Gilliam refused his medications on August 10, August 21, August 26, August 28-29, September 3, September 9, October 17, October 20, October 22-23, and October 27-28, 2019.  Doc. No. 33-5 at 1-3.  Several disciplinary issues were described, including one fight with inmate Robert Smith on August 21, 2019.  *Id.*  The only reference to Gilliam suffering back pain was made on August 14, 2019.  *Id.* at 3.  In that report, Lanius stated: "Here is an update on Richard Gilliam. The ibuprofen and prednisone is alleviating the pressure in his back. Gilliam is still having issues getting up & down with twitching in his lower back as well as pains going down his legs."  *Id.*

### Defendants' Affidavits

According to his affidavit, Lanius served as medical liason for the LCDC in August 2019.  Doc. No. 33-9, *Affidavit of Robert Lanius*, at ¶1.  In that role, he was responsible for reviewing medical requests submitted by detainees and arranging for treatment by medical or dental providers.  *Id.* at ¶2.  He also arranged for the refill

and distribution of prescribed medications for detainees.  *Id.*  Providers with ARCare conducted medical call twice per week for non-emergency medical needs while any inmate with emergency medical needs was transported to the nearest available emergency room.  *Id.* at ¶5.

Lanius was not present on August 6, 2019, when Gilliam has alleged that his back pain began. Doc. No. 33-9 at ¶10.  He claims that he communicated with Gilliam about his medical issues on a regular basis and responded to each of Gilliam's requests for medical treatment by scheduling an appointment with a medical provider to evaluate and treat his complaints.  *Id.* at ¶11-12. Lanius claims that he never witnessed Gilliam unable to stand or walk in the days and weeks following his initial back complaints.  *Id.* at ¶ 13.  He also explains that ARCare ordered x-rays and any other diagnostic tests and would schedule those tests if they were deemed necessary.  *Id.* at ¶8.  Lanius explains that he had no authority to decline any treatment ordered by a provider.  *Id.* at ¶9.

Regarding Gilliam's shoe complaints, Lanius explained that inmates were only allowed to wear the shoes issued by the LCDC unless a medical provider directed that an inmate wear special shoes for medical reasons.  *Id.* at ¶6.  He stated that Gilliam had no such orders for the Nike shoes he requested.  *Id.* at ¶7.

Sheriff Staley also avers that he was not present during the incident on August 6, and did not become aware of Gilliam's complaints of back pain until this lawsuit

was filed.  Doc. No. 33-11, *Affidavit of Sheriff Staley,* at ¶¶ 4, 7.  Sheriff Staley claims he would not normally be made aware of such complaints as he does not personally handle inmate's medical requests and relies on his chain of command headed by Jail Administrator Kristi Flud to handle such matters. *Id.* at ¶¶2-3.

According to Grigsby's affidavit, she served as LCDC's assistant administrator at the time Gilliam complained of lower back pain.  Doc. No. 33-10, *Affidavit of Margie Grigsby,* at ¶ 2.  In that role, she may have collected medical requests and given them to the medical liason.  *Id.*  She was present on August 6 and recalls that Gilliam's only complaint was lower back pain and that he was not bleeding or suffering any apparent serious or emergent medical need.  *Id.* at ¶¶4-5.  Regarding the incident, Grigsby states:

> Other than his statements of pain, there was no visual indicators that he was unable to walk or stand.  He was directed to place a request for sick call on the kiosk so that he could be evaluated by a medical provider at the next available visit.  While we were present in the cell, it was noticed that he had designer tennis shoes in his cell which did not appear to be medically prescribed shoes.  Those shoes were confiscated at that time.

*Id.* at ¶4.  Grigsby also states that she never witnessed Gilliam unable to stand or walk in the days and weeks following his initial back complaints.  *Id.* at ¶7.

## IV.  Analysis

Defendants argue that they are entitled to qualified immunity with respect to Gilliam's claims because he cannot establish a constitutional violation. Qualified

immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## A.      *Deliberate Indifference*

Gilliam claims that Defendants Lanius, Grigsby, and Hodge were deliberately indifferent to his serious medical needs by not allowing him to keep certain Nike tennis shoes and by not adequately treating his back pain. Doc. No. 17 at 6-7. Pretrial detainees' claims are evaluated under the Fourteenth Amendment's Due

Process Clause rather than the Eighth Amendment.  *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).  Pretrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment.  *See id.* (citing *Spencer v. Knapheide Truck Equip. Co.,* 183 F.3d 902, 906 (8th Cir. 1999)); *see also Davis v. Hall,* 992 F.2d 151, 152–53 (8th Cir. 1993) (per curiam) (applying deliberate indifference standard to pretrial detainee's claims of inadequate medical care).[8] To succeed with an Eighth Amendment inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs.  *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

---

[8] In *Spencer,* the Eighth Circuit explained that it had never articulated an exact standard for evaluating medical treatment claims brought by pretrial detainees.  183 F.3d at 905.  The Court acknowledged that pretrial detainees' claims may be subject to an objective reasonable test rather than the subjective deliberate indifference standard.  *Id.* The Eighth Circuit addressed this issue again in *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016), where it declined to address the proper constitutional standard unnecessarily, but noted that when that case was decided it was not clearly established that a pre-trial detainee was entitled to more protection than that provided by the Eighth Amendment.

1.     Shoes

Lanius provided affidavit testimony that Gilliam had no medical orders for the Nike shoes he wanted to keep.  Doc. No. 33-9 at ¶ 7.  In response, Gilliam has produced no evidence, such as a prior prescription, to prove that he required special shoes for medical reasons.   Gilliam's medical records do not indicate that he requested a prescription for orthopedic shoes at any of his medical encounters while he was incarcerated at the LCDC.  *See* Doc. No. 33-8.  Further, he does not describe any specific medical condition requiring special shoes in his amended complaint or the grievances he filed regarding the shoes.  *See* Doc. No. 8; Doc. No. 33-3 at 7-8, 12, 17, 20 & 22.  Although Gilliam claimed he had a prescription for soft sole shoes at prior institutions, the responses to his grievances made clear the shoes that were taken were not medical or orthopedic but were designer Nike shoes which inmates were not allowed to have.  Because there is no evidence that Gilliam had a serious medical need for special shoes, Grigsby, Hodge, and Lanius are entitled to summary judgment on this claim.

2.     Back Pain

Defendants Grigsby, Hodge, and Lanius are also entitled to summary judgment on Gilliam's deliberate indifference claim regarding the treatment of his back pain.  Gilliam has come forward with no evidence to show that his back

problems were sufficiently serious to warrant emergency treatment or that any delay in treatment of his back pain worsened his condition.

First, there is no indication that Gilliam had a preexisting back injury or chronic condition. His medical record from 2016 merely shows that he went to the hospital complaining of back pain; the treating physician noted it was an atraumatic injury that did not warrant x-rays. Doc. No. 35 at 19-23. Additionally, there is no evidence Gilliam complained of back issues while he was incarcerated at the LCDC before he injured his back on August 6, 2019. *See* Doc. No. 33-8 at 13-17.

Second, there is also no evidence that Gilliam suffered a medical injury on August 8, 2019, warranting emergency medical treatment. Grigsby is the only defendant who was present on August 6, when Gilliam first complained of back pain. She testified in her affidavit that she saw no visual indicators that he was unable to walk or stand or required emergency medical treatment. *See* Doc. No. 33-10 at ¶¶ 4-5. Gilliam has not produced any medical records or expert opinion testimony to establish that he suffered from an emergency medical condition on August 6 warranting immediate medical treatment or transfer to a hospital.[9] Without such

---

[9] There is no indication that Gilliam had a need for emergency medical treatment or treatment related to his back pain that would be obvious to a layperson. *See Williams v. Whitfield*, No. 2:09CV00100 JLH/BD, 2010 WL 4792146, at *2 (E.D. Ark. Nov. 17, 2010) (quoting *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir.1999) ("'[W]e have repeatedly emphasized that the need or the deprivation alleged must be *either obvious to the lay person* or supported by medical evidence, like a physician's diagnosis.'") (emphasis in original).

testimony, a jury would have to resort to speculation and conjecture to determine whether Gilliam had serious medical needs that Grigsby, Hodge, or Lanius deliberately disregarded.

Third, Grigsby, Hodge, and Lanius were responsive to Gilliam's complaints of back pain. Gilliam complained about his back every day from August 6 through August 10, and he was repeatedly informed by Grigsby, Hodge, Lanius, and others that he would be seen by a provider as soon as possible. Gilliam was examined by a medical provider one week later, on August 13, 2019. *See* Doc. No. 33-8 at 12-13. APRN Kristina Dulaney noted that Gilliam had a steady gait with no limping and his back appeared normal with no malformation or tenderness. *Id.* She prescribed prednisone and ibuprofen and ordered an x-ray of Gilliam's lower spine. *Id.* Although it appears he never received the x-ray, there is no evidence that Grigsby, Hodge, or Lanius had any involvement in any decision not to take an x-ray. In fact, Lanius provided affidavit testimony that as medical liason, he had no authority to decline any treatment ordered by a provider. *See* Doc. No. 33-9 at ¶9.

Finally, Gilliam has produced no evidence to establish that the one-week delay between his injury on August 6 and his treatment by APRN Dulaney on August 13 caused any detrimental effect or injury. *See Laughlin v. Schriro,* 430 F.3d 927,

---

Lanius and Grigsby testified in their affidavits that they never witnessed Gilliam unable to stand or walk following his complaints of back pain. Doc. Nos. 33-9 & 33-10.

929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (holding that an inmate must produce verifying medical evidence to show detrimental effect of a delay in medical treatment to avoid summary judgment). Indisputably, Gilliam has not provided any verifying medical evidence that any delay in medical treatment caused him any specific physical injury.  His requests and grievances show that he only occasionally complained of back pain after he was seen by APRN Dulaney on August 13.  *See* Doc. No. 33-3 at 18-107.  Three days later, on August 16, Lanius reported that the ibuprofen and prednisone had alleviated pressure in Gilliam's back, but Gilliam was still experiencing some pain and trouble getting up and down.  Doc. No. 33-5 at 3.  In a total of 73 grievances or requests filed after August 13, Gilliam complained about his back just four times.  Doc. No. 33-3 at 36, 68, 86 & 94.

Furthermore, Gilliam's medical records following the August 13 examination by APRN Dulaney do not show that he suffered serious ongoing back problems.  On September 9, 2019, Gilliam made no complaints regarding his back during an appointment with APRN Kristin Wood.  Doc. No. 33-8 at 10.  He was treated for his back pain again on September 23, when Wood recommended rest, ice, no twisting or heavy lifting, and use of a lumbar support belt.  *Id.* at 9.  And he was seen for other issues on several subsequent occasions.  *Id.* at 1-7.  While his back pain was sometimes listed as a current condition/problem, his gait and stance were always

listed as normal.  *Id.*  There is simply no evidence that Gilliam suffered a serious ongoing back injury that was made worse by an initial delay in treatment.

For these reasons, Gilliam fails to create a genuine dispute of material fact with respect to his deliberate indifference claims against Grigsby, Hodge, or Lanius, and they are entitled to summary judgment on these claims.

## B.   *Retaliation*

Gilliam also asserts that he was denied medical treatment by all the defendants, including Sheriff Staley, in retaliation for grievances and a PREA complaint he made against Grigbsy.

To succeed on a § 1983 retaliation claim, a plaintiff must prove: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity.  *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013).   Speculative and conclusory, or *de minimis* allegations cannot support a retaliation claim.  *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). A plaintiff must also prove a causal connection between the constitutionally protected activity and the adverse action.  *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). Temporal proximity between a protected activity and an adverse action "is relevant but not

dispositive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)).

Gilliam's allegations of retaliation are at best speculative and conclusory, and could be dismissed for that reason alone. However, these claims fail for a number of other reasons as well.

First, as the Court has already explained, there is no evidence that Gilliam was denied medical treatment by Grigsby, Hodge, or Lanius. Further, Sheriff Staley has submitted an affidavit testifying that he was not involved in the day-to-day operations of the jail and was unaware of Gilliam's complaints until the lawsuit was filed. *See* Doc. No. 33-11. Gilliam has come forward with no proof to show otherwise. There is simply no evidence that Gilliam suffered any adverse action as a result of the grievances he filed or the PREA complaint against Grigsby.

Second, even if the one-week delay in treatment were considered an adverse action, Gilliam has not shown that it was sufficient to deter him from filing future grievances or complaints. "The ordinary-firmness test is designed to weed out trivial matters from substantial violations of the First Amendment." *Gonzalez*, 971 F.3d at 744 (citing *Santiago*, 707 at 992). "'The test is an objective one, not subjective. The question is.... [w]hat would a person of 'ordinary firmness' have done in reaction to the [adverse action]?'" *Id.* (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)). While the test is an objective one, "how the plaintiff acted might

be evidence of what a reasonable person would have done." *Garcia*, 348 F.3d at 729.  See *Gonzalez*, 971 F.3d at 745 (considering plaintiff's actions in response to the alleged retaliation as evidence of what a person of ordinary firmness would have done and affirming grant of summary judgment); *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (noting that plaintiff continued to exercise her First Amendment rights despite the retaliatory acts of the defendants).

The Court has considered Gilliam's actions in continuing to file requests, grievances and lawsuits as evidence of what a person of ordinary firmness might do. Between August 6 and October 14, 2019, Gilliam filed 86 requests or grievances, in which he complained about a multitude of issues at the LCDC.  *See* Doc. No. 33-3 at 6-107. Gilliam has also filed 13 lawsuits against defendants working at the LCDC since he filed this lawsuit:  *Gilliam v. Hodge,* 4:19-cv-00682-KGB; *Gilliam v. Staley, et al.,* 4:19-cv-00711-BD; *Gilliam v. Lanius, et al.,* 4:19-cv-00721-DPM; *Gilliam v. Steffen, et al.,* 4:19-cv-00740-BSM; *Gilliam v. Staley, et al.,* 4:19-cv-00769-BSM; *Gilliam v. Grigsby,* 4:19-cv-00772-BSM; *Gilliam v. Smith, et al.,* 4:19-cv-00779-BRW; *Gilliam v. Smith, et al.,* 4:19-cv-00758-LPR; *Gilliam v. Lanius, et al.,* 4:20-cv-00764-JM; *Gilliam v. Lopez, et al.,* 4:19-cv-00792-BSM; *Gilliam v. Smith, et al.,* 4:20-cv-00801-KGB; *Gilliam v. Berryman, et al.,* 4:20-cv-00926-LPR; *Gilliam v. Hodge,* 4:20-cv-01053-KGB.  Under all of the circumstances presented, the Court

finds a brief delay in medical treatment would not chill a person of ordinary firmness from continuing to exercise his First Amendment rights.

Third, even if a minor delay in treatment might have chilled an ordinary person's actions, Gilliam has failed to establish that the alleged adverse action was motivated at least in part by the exercise of the protected activity. Simply put, Gilliam has not provided evidence that any of the Defendants acted with a retaliatory motive. To succeed on a retaliation claim, a plaintiff must provide affirmative evidence of a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d 1152, 1157 (8th Cir. 2009); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient."). Any temporal relationship between protected speech and an adverse action, without more, fails to establish a retaliatory motive. And Gilliam has failed to provide "more" with respect to his claims against the Defendants. They are entitled to summary judgment on his retaliation claims.

## V.  Conclusion

The Defendants are entitled to qualified immunity because Gilliam has not established that his constitutional rights were violated. Accordingly, Defendants' motion for summary judgment (Doc. No. 31) is granted, and Gilliam's claims are dismissed with prejudice.

DATED this 29th day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE